No. 18,772.

GRAHAM FURNITURE COMPANY *v.* INDUSTRIAL
COMMISSION OF COLORADO, ET AL.
(331 P. [2d] 507)

Decided November 10, 1958.

Messrs. GRAHAM SUSMAN and HYMAN D. LANDY, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

Messrs. HORNBEIN & HORNBEIN, for defendant in error Retail Textile Clerks Local Union No. 454.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THE parties are here in the same order as they appeared in the trial court and we will refer to them herein as plaintiff and defendants or by name.

Defendant Retail Textile Clerks, L. U. 454, A.F.L., hereinafter referred to as the Union, filed its petition with the Industrial Commission of Colorado for an election to determine a collective bargaining unit for the "full-time, regular commissioned salesmen" in the employ of the plaintiff. Thereafter and on December 12, 1955, a tentative polling list containing the names of six employees was submitted by the Commission. This list contained the names of Albert Chapman and John Friedland among others, and stated that "objections to the correctness of the list must be made in writing * * * not later than 5 P.M. January 2, 1956." On the same day, December 12, 1955, the notice of election was issued fixing the time of election as January 5, 1956, and setting forth the same statement as to objections to the correctness of the list.

It appears that there were four salesmen employed by the plaintiff at its retail furniture store in Englewood, Colorado, and that they had requested the Union to represent them in collective bargaining with their employer.

It also appears that there were two additional employees who worked at the used furniture department of employer at a location about one block away from the store which sold new furniture. It appears that in the furniture business it is often necessary to accept used furniture as a trade-in on the purchase price of new merchandise and that for a considerable period of time this employer's new and used furniture were handled and sold from the same premises but because of lack of space and as a matter of convenience the used furniture department was later moved to a separate location. The record discloses that the two places of business are operated under the same name; the used furniture salesmen sometimes worked in the store selling new furniture; there is a single credit department; all deferred payments are made at the main store; and there is but a single management with an over-all manager.

It further appears that all the salesmen are paid on a commission basis with a guaranteed minimum even though the amount and period of such payments may vary as among said salesmen.

On December 20, 1955, the Union protested the eligibility of Chapman and one Paul Needler to vote in the election to determine whether the Union should represent plaintiff's employees. The basis of this complaint was that Chapman and Needler were employees of the used furniture department and did not have a community of interest with the other salesmen and that Chapman acted in a supervisory capacity.

The Union's protest was overruled and on January 3, 1956, the Commission issued its supplemental order wherein it approved the tentative polling list dated December 12, 1955, as the final polling list. The election was held January 5, 1956, as scheduled, at which time the Union challenged the ballots of Chapman and Friedland. It did not challenge the right of Needler to vote. The challenged ballots of Chapman and Friedland were sealed and have not been opened. If the two ballots are

against the Union as a bargaining unit it would result in a tie vote because one of the petitioning employees has now voted against the Union, and the Union would not have a majority as required by statute.

On January 27, 1956, a hearing was held before the Referee of the Industrial Commission to determine the validity of the two challenges. On February 27, 1956, the Referee recommended that the ballot of Friedland be opened and counted and that Chapman's vote remain sealed and not be counted as he was found to be an employee in a supervisory capacity.

Plaintiff filed a petition for review which was denied and on March 12, 1956, the Commission entered its order based upon the above recommendations of the Referee. On March 15, 1956, the Commission entered a supplemental order, ordering that both Chapman's and Friedland's ballots remain sealed and uncounted. A new petition for review was denied. Thereafter plaintiff filed its action in the district court to review the eligibility of Chapman to cast his vote and to secure a rescission of the order that both ballots remain sealed and unopened.

Plaintiff urges that as a matter of law the Union could not challenge the two ballots at the time of election, and, that Chapman was eligible to vote in the election.

The procedure for certifying election lists by the Commission is specifically set forth in C.R.S. '53, 80-5-5 (5), which provides in pertinent part:

*"The commission shall investigate and determine what persons shall be qualified and entitled to vote* at any election held by it and shall prepare and certify a poll list of such qualified voters and shall file the same in the office of the commission not later than twenty-four hours preceding the time of such balloting and not earlier than forty-eight hours preceding the same, which said list shall be available to the collective bargaining units whose interests are involved in the election * * * No person whose name is not so certified shall be entitled to vote at such election. The commission shall pro-

tect the secrecy of the ballot * * *." (Emphasis supplied.)

C.R.S. '53, 80-5-9, provides that, "The commission may adopt reasonable and proper rules and regulations relative to the exercise of its powers and authority and proper rules to govern its proceedings and to regulate the conduct of all elections and hearings * * *."

It appears that the Industrial Commission has adopted a rule which provides as follows:

### "RULE II (4)

"Any employer or his agent, or any employee or any representative of any nominee for collective bargaining unit may challenge the right of any person to vote upon the ground of identity, *his status as an eligible voter,* or for other good cause. The judges may thereupon consider the challenge, decide the question, and accept or reject the voter's ballot in accordance with such decision, or they may receive the ballot, suitably sealed, as a challenged ballot, whether the challenge shall be sustained subject to later determination." (Emphasis supplied.)

The question posed as to whether the Union may challenge the two ballots at the time of the election depends upon whether the Commission had authority to adopt the italicized portion of the above quoted Rule II (4) in view of the wording in the statute.

In accordance with its regulations and procedure the Industrial Commission made its investigation and filed its preliminary or tentative polling list on December 12, 1955, nearly a full month before the election, and its order provided *inter alia* "objections to the correctness of this list must be made in writing and must be submitted not later than 4 P.M., January 2, 1956." The written protest of the Union to two names on the list was filed on December 20, 1955, as pointed out above, and it was on January 3, 1956, that a supplemental order was entered by the Commission providing "that the Tentative Polling List, dated December 12, 1955, should

be approved and adopted as the Final Polling List herein."

■ Here the applicable statute is complete as to how one attains the status of an eligible voter. When a statute clearly provides a method for accomplishing a desired result, it follows that an administrative commission cannot set up a regulation which is contrary thereto. Its regulations must fit within the framework of the statute itself. *Liebhardt v. Tasher* (1955), 132 Colo. 554, 290 P. (2d) 1107. Also see 42 Am. Jur. 428, §99. In the *Liebhardt* case this court overruled a formula adopted by the Inheritance Tax Commissioner, saying:

"Rules and Regulations adopted by a department of government, unless expressly or impliedly authorized by statute, are without force or effect if they add to, change or modify existing statutes."

In *Spears Hospital v. State Board* (1950), 122 Colo. 147, 220 P. (2d) 872, this court said:

"In considering the question of the regular pursuit of authority, it is fundamental that authority to regulate does not include the authority to legislate, but is strictly limited by the law under which it is pursued."

To the same effect see *Manhattan General Equipment Co. v. Commissioner of Internal Revenue* (1936), 297 U.S. 129, 56 Sup. Ct. 397.

■ We hold that under the wording of this statute, once the final polling list is certified it becomes final for the purpose of determining the eligibility of those entitled to vote. The matter thus could not again be raised at the time of the election. It is for the legislature and not the courts to effect a change in such procedure if it is deemed desirable or necessary.

To hold that the clear words of the statute can be circumvented by a regulation adopted by the Commission is to ignore their plain meaning and confer legislative powers on the Commission. The regulation in question to the extent it relates to the eligibility of voters in col-

lective bargaining elections, is without legal force or effect.

■ The statute as thus construed preserves the secrecy of the ballot to those who vote in the election. It denies nothing to the Union or those employees who sought the election because they had the right, which they exercised, to make challenges prior to final certification of the polling list. It is at that time that any evidence which it is contended affects the eligibility of any person on the voting list must be presented.

■ Defendants have cited Section 102.69 of the Rules and Regulations of the National Labor Relations Board as described in 1 Labor Law Reporter 2936 relating to challenges at elections. This regulation is not in point and has no application here in view of the precise wording of our statute, which does not permit challenges at the time of voting.

We need not determine whether Chapman was in a supervisory capacity and was thereby deprived of a right to cast a ballot since the Industrial Commission, when it certified the final voting list, had made that determination by such action. No one knows whether on the opening and counting of the two ballots in question the votes will be in favor of or against the Union. The two employees are entitled to have their ballots opened and counted, and in failing to so direct, the trial court committed error.

The judgment is reversed with directions to the trial court to enter its order to the Commission directing that the ballots cast by Chapman and Friedland be opened and counted.