**FIRSTBANK OF NORTH LONGMONT, N. A., a National Banking Association, Petitioner,**

v.

**The BANKING BOARD of the State of Colorado and Harry Bloom, State Bank Commissioner, and their successors in office, Joseph B. Bowers, Joseph C. French, Robert M. Vinton, Robert N. Hall and Edward R. Peppler, as applicants for Charter for the proposed Pioneer Bank of Longmont, Respondents.**

No. 80CA1161.

Colorado Court of Appeals, Div. II.

June 3, 1982.

Rothgerber, Appel & Powers, Tennyson W. Grebenar, Denver, for petitioner.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Richard H. Goldberg, Asst. Atty. Gen., Denver, for respondents Banking Bd. and Harry Bloom.

Robert M. Vinton, Denver, for respondents Joseph B. Bowers, Joseph C. French, Robert M. Vinton, Robert N. Hall, and Edward R. Peppler.

STERNBERG, Judge.

Firstbank of North Longmont seeks review of the granting of a commercial bank charter to respondents, Joseph B. Bowers, Joseph C. French, Robert M. Vinton, Robert N. Hall, and Edward R. Peppler. We affirm.

Firstbank's petition for review centers on the Board's interpretation of §§ 11–3–106 and 11–3–108(1), C.R.S. 1973, which provide in pertinent part:

Section 11–3–106:

> "Each incorporator shall, prior to the filing of said application, subscribe and pay in full in cash or stock having a prior value of not less than one percent of the minimum capital and paid-in surplus requirements."

Section 11–3–108:

> "In addition to the paid-in capital and surplus requirements as set forth in Section 11–3–103, each subscriber at the time he subscribes to the stock of a proposed state bank, shall pay in cash a sum at least equal to five percent of the par value of such stock into a fund to be used to defray the expenses of organization."

Firstbank contends that the respondents failed to comply with these statutory sections by not paying in the required minimum capital and surplus amounts prior to filing the application and by not paying the organizational expenses prior to filing the application. It also asserts noncompliance in that "each" organizer had not paid the expenses.

The Board decided that the statutory requirements could be complied with prior to the hearing. Its decision was based on the findings that the requirements were not jurisdictional and that Firstbank was not prejudiced by the Board's allowing cure prior to the hearing. We agree with this interpretation of the statute.

When we interpret a statute, "legislative intent is the polestar." *People v. Lee*, 180 Colo. 376, 506 P.2d 136 (1973). *See also* § 2–4–212, C.R.S. 1973. A statute should be construed to accomplish the purpose for which it is enacted. *In re Questions Submitted by United States District Court*, 179 Colo. 270, 499 P.2d 1169 (1972); *Cross v. Colorado State Board of Dental Examiners*, 37 Colo.App. 504, 552 P.2d 38 (1976). And, with specific reference to the use of the word "shall" in a statute, it is presumed to have mandatory connotations, unless it is necessary to construe the word as "may" to give effect to legislative intent.

*Board of County Commissioners v. Edwards*, 171 Colo. 499, 468 P.2d 857 (1970).

As stated with characteristic eloquence and logic by Judge Learned Hand in *Central Hanover Bank & Trust Co. v. Commissioner of Internal Revenue*, 159 F.2d 167 (2d Cir. 1947):

> "There is no more likely way to misapprehend the meaning of language—be it in a constitution, a statute, a will or a contract—than to read the words literally, forgetting the object which the document as a whole is meant to secure. Nor is a court ever less likely to do its duty than when, with an obsequious show of submission, it disregards the overriding purpose because the particular occasion which has arisen, was not foreseen. That there are hazards in this is quite true; there are hazards in all interpretation, at best a perilous course between dangers on either hand; but it scarcely helps to give so wide a berth to Charybdis's maw that one is in danger of being impaled upon Scylla's rocks."

*But see Tompkins v. DeLeon*, 197 Colo. 569, 595 P.2d 242 (1979).

By the statutes at issue, the General Assembly intended to assure that, in order to protect the public, a new bank should commence operations with its capital and paid-in surplus intact, and with its organizational expenses paid. That is the logical, overriding purpose for enactment of the statutes here involved. It is undisputed that the capital, surplus, and organizational expenses were paid in prior to the hearing before the Board, thus satisfying the legislative purpose.

The fact that one organizer had paid all of the organizational expenses required of all of the organizers prior to filing the application is of no moment. To require each of the organizers to perform these requirements before filing the application as opposed to performing them prior to the hearing before the Board would exalt form over substance and would do nothing to further the legislative purpose. *See Tacorante v. People*, Colo., 624 P.2d 1324 (1981);

*In Re Questions Submitted by United States District Court, supra.*

Order affirmed.

PIERCE and BERMAN, JJ., concur.