Kimary LIEBELT and Mark Liebelt,
Plaintiffs–Appellants,

v.

BOB PENKHUS VOLVO–MAZDA,
INC., Defendant–Appellee,

and

Jason Hearne, Defendant.

No. 97CA0757.

Colorado Court of Appeals,
Div. II.

July 9, 1998.

Rick P. Sauer, Canon City, for Plaintiffs–Appellants.

White and Steele, P.C., James M. Dieterich, Denver, for Defendant–Appellee.

Opinion by Judge BRIGGS.

In this personal injury action, plaintiffs, Kimary Liebelt and Mark Liebelt, appeal from the summary judgment entered in favor of defendant, Bob Penkhus Volvo–Mazda, Inc. (Penkhus). We affirm.

Plaintiffs were injured when their vehicle was rear-ended by a vehicle driven by Jason Hearne. Two days before the accident, Hearne had signed a "conditional sale" agreement for the purchase of the vehicle from Penkhus.

Although the entire contract is not in the record, the agreement was apparently conditioned on Penkhus approving credit for Hearne. If approved, Hearne would make payments on the vehicle over time. The agreement provided that title would not pass to Hearne until all sums due under the contract had been paid.

At the time of the accident, Penkhus had not decided whether to approve credit for Hearne. Afterwards, Penkhus determined Hearne's credit history was unacceptable.

Hearne was uninsured. The liability insurance company for Penkhus refused plaintiffs' request to provide liability coverage to Hearne as a permissive driver. The insurance company asserted that, by statute, title to the vehicle had passed to Hearne upon execution of the conditional sale agreement, leaving him outside the company's insurance coverage.

Plaintiffs filed this action against both Hearne and Penkhus. The claims against Penkhus included negligent entrustment and negligence per se. Plaintiffs were unable to locate Hearne for service of process, leaving Penkhus as the only defendant appearing in the matter.

## I.

Plaintiffs first contend the trial court erred in granting summary judgment on their claim against Penkhus for negligent entrustment. They assert that Penkhus should have known Hearne did not have liability insurance, as required by statute. In effect, their argument is that a seller of an automobile has a duty to inquire whether the purchaser is to be the driver and, if so, whether the purchaser has automobile liability insurance. If the purchaser is to be the driver and has no insurance, the seller would apparently have a duty to refuse to sell the vehicle to that purchaser. We are not persuaded.

Initially, we note that the argument assumes, as earlier contended by the insurer for Penkhus, that at the time of the accident liability coverage was not available from that insurer because Hearne was the "owner" of the vehicle, pursuant to §§ 42–1–102(53) and 10–4–703(8), C.R.S.1997. Hence, according to plaintiffs' argument, no insurance coverage was available unless Hearne was separately insured.

The facts supporting the assumption are not clear from the record before us. As earlier noted, the contract was apparently conditioned on Penkhus approving credit. Nevertheless, because Penkhus rests its arguments on appeal on the same assumption, for purposes of our discussion we will likewise assume that Hearne was the "owner" of the vehicle at the time of the accident.

In *Casebolt v. Cowan*, 829 P.2d 352 (Colo. 1992), the supreme court recognized the doctrine of negligent entrustment as part of the law of this state. The court noted that the doctrine in its general form is set forth in Restatement (Second) of Torts § 308 (1965). That section provides:

It is negligent to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

However, the supreme court in *Casebolt* concluded that Restatement (Second) of Torts § 390, which it termed a special application of the rule stated in Restatement § 308, provided the appropriate basis for resolving the issue of duty in the context of supplying chattels for the use of another. Restatement § 390 provides:

One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

When analyzed under the approach of Restatement § 390, plaintiffs' argument must fail. Liability under that analytical framework is limited to those who supply a chattel for use by another whom the supplier "knows

or has reason to know" is likely to use it in a manner involving an unreasonable risk "of physical harm." Plaintiffs have made no claim that defendant knew or had reason to know the purchaser was an incompetent driver.

Plaintiffs' argument rests more easily on the analytical framework set forth in Restatement § 308. Its approach differs from that of Restatement § 390 in at least two respects pertinent here.

First, Restatement § 308 does not require proof that the supplier of the chattel "knows or has reason to know" that the user is likely to use the thing in a manner creating an unreasonable risk of harm. Instead, it requires proof that the supplier "knows or should know" of the risk. Unlike "reason to know," a standard of "should know" creates a duty to use reasonable diligence to ascertain the existence or non-existence of the fact in question. *See generally* Restatement (Second) of Torts § 12 and comment a (1965); *see also* Restatement (Second) of Torts § 401 comment a (1965)(the words "reason to know" do not impose any duty to ascertain unknown facts, and are to be distinguished from the words "should know").

In addition, unlike Restatement § 390, the risk created for which the supplier of the chattel may be subject to liability under Restatement § 308 is not expressly limited to a risk of "physical" harm. Although the intent of the change in wording is not clear, it is at least arguable that liability could be imposed for creating an unreasonable risk of *economic* harm.

■ We nevertheless decline the invitation to create the duty urged by plaintiff. First, it would require application of an analytical approach different from that set forth in Restatement § 390, which the supreme court in *Casebolt v. Cowan, supra,* expressly adopted for suppliers of chattels. We are not free to ignore that approach. *See Bernard Johnson, Inc. v. Continental Constructors, Inc.,* 630 S.W.2d 365 (Tex.Ct.App.1982) (intermediate appellate court may not exercise the raw judicial power necessary to create a new duty where the supreme court has established and never revoked contrary legal principles); *cf. Taurino v. Ellen,* 397 Pa.Super. 50, 579 A.2d 925 (1990)(an intermediate appellate court is not free to disregard existing law established by the supreme court based on generalized allegations of societal changes).

■ Furthermore, even if we were to read *Casebolt* as permitting the use of Restatement § 308 for determining the duty of a supplier of chattels in some circumstances, caution in recognizing the duty urged by plaintiffs would still be appropriate. Determining whether a duty exists requires the delicate balancing of many competing considerations. These include the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of a seller's conduct, the magnitude of the burden on a seller to guard against injury or harm to a third party, and the consequences of placing the burden upon a seller. *See Casebolt v. Cowan, supra.*

The duty plaintiffs urge us to recognize would strike a balance substantially different from that which resulted from the duty recognized in *Casebolt.* For example, the risk of "harm" is at least in some ways more attenuated when selling a vehicle to an uninsured but competent driver than to an insured driver known to be incompetent. Further, if the purchaser were not to be the driver, the seller's duty of inquiry would not necessarily be limited to the purchaser. And, the response to an inquiry about insurance would not always be a simple yes or no, raising questions as to the precise circumstances in which the duty would arise. In addition, the utility of recognizing such a duty has not been demonstrated and is not so apparent as to be assumed. Finally, recognizing a duty on sellers of vehicles to inquire of, and refuse sales to, uninsured but competent drivers would not be without impact on commerce. *See Dodge Center v. Superior Court,* 199 Cal.App.3d 332, 244 Cal.Rptr. 789 (1988).

For these reasons, and in light of the supreme court's earlier visit to this area of the law, we decline plaintiffs' invitation to recognize a duty on sellers of vehicles to inquire whether potential purchasers have liability insurance, and to refuse sales to those who do not. Thus, we find no error in the trial court's grant of summary judgment on the claim in favor of Penkhus.

**1150**

Because of our conclusion, it is unnecessary to address the other arguments raised by Penkhus concerning negligent entrustment.

## II.

 Plaintiffs also contend the trial court erred in granting summary judgment on their claim of negligence per se. They assert that Penkhus violated the Colorado "dealer-plate" law and they suffered injuries as a result. Plaintiffs' argument, in effect, is that Hearne was able to drive without a license plate, or insurance, only because Penkhus illegally permitted him to use one of its dealer plates. We find no error in the trial court's ruling.

■ The violation of a statute or regulation may constitute negligence per se. However, a plaintiff must show that the statute or regulation was adopted for the public's safety; that the plaintiff is a member of the class of persons the statute was intended to protect; and that the injuries suffered were of the kind the statute was enacted to prevent. *Lyons v. Nasby,* 770 P.2d 1250 (Colo.1989); *see also Gerrity Oil & Gas Corp. v. Magness,* 946 P.2d 913 (Colo.1997).

Here, plaintiffs rely on an alleged violation by Penkhus of Dealer Licensing Board Regulation 204–14(6), 1 Code Colo. Reg. 204–14(6). The regulation requires that a copy of dealer proof of ownership be maintained in the motor vehicle being driven on a full-use dealer plate.

Even if we were again to assume that Hearne would be deemed the owner of the vehicle upon execution of the conditional sale agreement, plaintiffs have failed to show that the regulation was enacted for the purpose of protecting the public. It therefore provides no basis to support plaintiffs' claim for negligence per se.

The licensing board regulations were enacted pursuant to § 42–3–127, C.R.S.1997, which provides the statutory framework for manufacturers and dealers to obtain and use dealer plates. The statute is part of a statutory scheme that, as stated in § 42–3–101(1), C.R.S.1997, was enacted to implement Colo. Const. art. X, § 6. This constitutional provision requires the General Assembly to enact laws classifying motor vehicles, prescribing methods of determining taxable value, and requiring payment of taxes.

As stated in § 42–3–101(2), C.R.S.1997, the General Assembly's intent was to provide for the administration and collection of the tax and for the apportionment and distribution of the revenue derived from the tax. Plaintiffs have cited no authority indicating that the purpose of Reg. 204–14(6) was any different, and we discern no other purpose in the regulation itself. *See also Department of Revenue v. A & A Auto Wrecking, Inc.,* 625 P.2d 1021 (Colo.1981)(fundamental purpose of the statutory scheme and implementing regulations was to provide for the collection of annual ownership taxes on all motor vehicles).

Plaintiffs have therefore failed to show that the regulation was intended to protect the safety of the public, or that plaintiffs were members of the class of persons the statute was intended to protect, or that the injuries suffered were of the kind the statute was enacted to prevent. Thus, the trial court properly granted summary judgment in favor of Penkhus.

Judgment affirmed.

CRISWELL and NEY, JJ., concur.